IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KESIA HOWARD, | ) | |
| | ) | No. 16 C 7524 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[2]

Claimant Kesia Yvette Howard ("claimant" or "Ms. Howard") has filed a motion for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income benefits ("SSI") (doc. #15: Pl.'s Mot. for Summ. J.). The Commissioner has filed a motion seeking affirmance of the decision denying benefits (doc. #23: Def.'s Mot. for Summ. J.). For the following reasons, we grant Ms. Howard's motion for remand and deny the Commissioner's motion.

### I.

On October 25, 2011, Ms. Howard applied for SSI, claiming that she became disabled on July 26, 2011 due to asthma, sleep apnea, vision problems, memory problems, anemia, arthritis in her knees and fibroids (R. 384, 394, 417, 421). After her claim was initially denied, Ms. Howard filed a request for reconsideration, which was denied on April 5, 2012 (R. 229, 234,

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On August 26, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 8).

239). Ms. Howard subsequently requested a hearing by an Administrative Law Judge ("ALJ"), which was held on December 18, 2012 (R. 175, 243). On January 25, 2013, the ALJ ruled that Ms. Howard was not disabled, and she filed a request for review (R. 178, 284). On May 13, 2014, the Appeals Council remanded the case for further consideration of: (1) new evidence related to Ms. Howard's learning disability and General Ability Index; (2) Ms. Howard's obesity; and (3) how Ms. Howard's assessed limitations were specifically supported in the ALJ's determination of her RFC (R. 194, 196).

Following two additional hearings on September 8, 2014 and May 28, 2015,[3] the ALJ issued a written opinion on August 26, 2015, finding Ms. Howard was not disabled from October 25, 2011 through the date of the decision (R. 220). The Appeals Council upheld the ALJ's determination on April 7, 2016, making the ALJ's determination the final opinion of the Commissioner (R. 1-7). See 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## II.

Ms. Howard was born on April 11, 1965 and was 50 years old at the time of her final hearing in May 2015 (R. 136). She completed the eighth grade and had taken some classes towards her GED, but had not finished the program (R. 137).[4] She never married and has three adult children, one of whom lives with her (*Id.*). Ms. Howard previously worked as a driver for a youth program, a lunch room attendant, and a security guard, although not at the level of

---

[3] At the September 2014 hearing, Ms. Howard testified about the medications she took for her physical impairments, her work history, her activities of daily living, and her difficulties at school (R. 44-126). After that hearing, the ALJ referred Ms. Howard for a consultative mental health examination. Ms. Howard requested a supplemental hearing after undergoing that examination; the second hearing occurred in May 2015 (R. 18).

[4] The record is unclear about the status of Ms. Howard's pursuit of her GED at the time of the 2015 hearing. At the September 8, 2014, hearing she testified that she stopped taking GED classes because it was too disruptive in her apartment building for her to be able focus on her work (R. 49). At the hearing on May 28, 2015, Ms. Howard testified that she was still working toward her GED (R. 30).

substantial gainful activity (R. 138–142, 219). Between 2001 and 2006, Ms. Howard also worked as a "parent patrol" at Limb Blue High School while one of her children attended there (R. 78, 79, 444). In a Work History Report she completed in connection with her application for benefits, Ms. Howard wrote that this job involved assisting teachers, patrolling hallways, and greeting school guests (R. 446).

Because (as we discuss below), our decision to remand rests on the ALJ's treatment of Ms. Howard's mental impairments, we will only briefly summarize her physical issues. Ms. Howard has a history of asthma, which is treated primarily through medication management; she has no recent hospital visits related to complications from asthma (R. 554). Ms. Howard had surgery for uterine fibroids in August 2011 and has arthritis in her knees; she had surgery on her left knee in 1995 (R. 547, 938). While diagnostic testing in 2011 and 2012 (MRI and x-ray) revealed degenerative changes from osteoarthritis in her knee, Ms. Howard's pain and tenderness was generally managed with medication and regular physical therapy (R. 587, 599, 600, 617, 733, 915, 918, 944, 946).

On December 1, 2011, Charles Carlton, M.D., examined Ms. Howard in connection with her claim for benefits (R. 554). Dr. Carlton's report summarized his examination of Ms. Howard with respect to both her physical and mental health (R. 556). The entirety of Dr. Carlton's mental status evaluation of Ms. Howard stated "[g]eneral observations are as noted above. She was alert and oriented to time, place and person. She describes no history of treatment for depression or psychiatric disorders" (R. 556). Dr. Carlton also noted that Ms. Howard complained of memory problems, but his report does not reflect that he tested Ms. Howard's memory (*Id.*).

In December 2011, Lionel Hudspeth, Psy.D, completed a psychiatric review technique for Ms. Howard, based on Dr. Carlton's examination and not upon his own examination of Ms.

3

Howard (R. 563-72). Dr. Hudspeth opined that Ms. Howard did not have any mental health impairments and thus he did not complete a Paragraph B assessment (R. 563). Dr. Hudspeth's written summary of his findings identifies Ms. Howard's allegations of memory problems as her only potential mental health issue; he found that she was not credible with respect to her allegations of memory problems but did not explain why he made this finding (R. 575). On April 4, 2012, agency doctor David Voss, PhD, affirmed Dr. Hudspeth's findings on the ground that Ms. Howard reported no psychiatric disorders or treatment (R. 607).

Ms. Howard underwent several days of psychological and intelligence testing between January 11, 2013 and February 19, 2013 to determine the possibility of a learning disorder, after a referral from Richard J. Daley College, which she was attending to obtain her GED (R. 652). The testing report showed that Ms. Howard was alert and oriented for situation, time, place and person, her mood was calm, and she was cooperative and friendly (R. 653). Ms. Howard's memory was grossly intact and she had average insight and judgment (*Id.*). Ms. Howard was judged to have index scores of 70 in verbal comprehension, 85 in perceptual reading, 86 in working memory, 59 in processing speed, and 70 in general ability, leading to a full scale IQ of 67 (*Id.*). The report cautioned that given the large spread among the individual indexes, Ms. Howard's generally ability index of 70 was a better estimate of her overall functioning than the IQ of 67 (R. 653-54). The report summarized that claimant's intellectual functioning was in the borderline/extremely low range and her verbal and performance abilities were significantly disparate (R. 658). Ms. Howard's anxiety could also contribute to her academic functioning (*Id.*). The report listed diagnoses of a reading disorder and a disorder of written expression (*Id.*).

At the request of the ALJ, state agency consultant Harvey I. Friedson, Psy.D, performed a mental status examination on Ms. Howard on December 3, 2014 (R. 899). His report reflects

4

that Ms. Howard was cooperative, with relevant and coherent speech (R. 901). She had some range of affect and cried during the exam (*Id.*). Dr. Friedson's testing of Ms. Howard's memory consisted of asking her how she had gotten to the appointment; she correctly responded that her son had driven her (*Id.*). Dr. Friedson diagnosed Ms. Howard with "depressive disorder" and added that his diagnosis would include borderline intellectual functioning (R. 902). On a Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Friedson opined that Ms. Howard was moderately limited in her ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions (R. 904). He assessed her as markedly limited in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions (*Id.*). Dr. Friedson also judged Ms. Howard to be moderately limited in her ability to interact appropriately with the public, co-workers, and supervisors and to respond appropriately to usual changes in her work setting (R. 905). When asked to identify the factors that supported his assessment, Dr. Friedson wrote "9th grade education, no diploma, slow learner, chronic pain, medical issues" (R. 904).

At the hearing on May 28, 2015, after considering the additional evidence of Ms. Howard's learning disability and mental health impairment, the ALJ gave the vocational expert ("VE") a hypothetical that asked her to consider an individual with the plaintiff's age, education and work history, who could lift 20 pounds occasionally and 10 pounds frequently, could stand and walk six hours in an eight-hour day and sit for six hours in an eight-hour day but who needed the opportunity to alternate between sitting and standing for up to two hours each, although not necessarily at will (R. 31-32).[5] The hypothetical claimant also had additional limitations of being unable to understand, remember, and carry out detailed and complex job tasks, and was limited

---

[5] The hypothetical also included the limitations of being unable to work at heights, climb ladders, or frequently negotiate stairs and avoiding concentrated exposure to fumes, dust, odors, gases or poorly ventilated areas as well as wet or humid environments or extreme of temperatures.

5

to casual contact with general public, coworkers and supervisors (*Id.*). The VE responded that such an individual would be able to perform light, unskilled work as a laborer, a small parts assembler or as an inspector, for which approximately 105,000 positions existed nationwide (R. 32, 33). However, the VE testified that all of the jobs identified would be ruled out if the individual were to be off task for 15 percent or more of the workday or miss more than one day per month (R. 33).

In his opinion dated August 26, 2015, the ALJ followed the familiar five-step process for determining disability, 20 C.F.R. § 404.1520(a)(4), and 416.920(a) (R. 204-08). After considering the new evidence of claimant's learning disability and Dr. Friedson's report, and further considering plaintiff's obesity, her need to alternate between sitting and standing, and other functional limitations, the ALJ found that Ms. Howard was not disabled within the meaning of the Social Security Act (the "Act") (R. 202, 203). The ALJ determined that Ms. Howard had not engaged in substantial gainful activity since the date of her application and that she had the following severe impairments: asthma, obesity, arthritis, history of learning disorder, and depression (R. 204-05). The ALJ next found that Ms. Howard's severe impairments, individually or in combination, did not meet or medically equal a listed impairment (R. 205).

With respect to whether Ms. Howard's mental health impairments met a listing, the ALJ considered Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.05 (intellectual disorders). In determining that Ms. Howard did not meet Listings 12.02 or 12.04, the ALJ considered whether she met the "Paragraph B" criteria for assessing mental impairments.[6] The ALJ found that Ms. Howard had only mild restrictions in her

---

[6] To satisfy the criteria of paragraph B, the mental impairments should meet at least two of the following restrictions: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." A marked limitation is more than moderate but less than extreme; and repeated episodes of

6

activities of daily living, as demonstrated by claimant's wide range of daily activities such as driving, shopping, attending a GED class, cleaning, budgeting and maintaining her own finances and paying her bills (R. 206). The ALJ found that Ms. Howard had moderate difficulties in social functioning, based primarily on Ms. Howard's own testimony and the opinion of Dr. Friedson, and moderate limitations in concentration, persistence, and pace, based primarily on Ms. Howard's reports of memory loss and the "objective medical evidence" (*Id.*).[7] Finally, the ALJ noted that Ms. Howard had not experienced any episodes of decompensation (*Id.*).

In determining whether Ms. Howard's impairments met or equaled the requirements of Listing 12.05, intellectual disability, the ALJ found that they did not, despite her IQ test score 67 (R. 208).[8] The ALJ first found the test result was of low probative value because it was unsubstantiated by evidence regarding the testing instruments utilized and the raw data (*Id.*). The ALJ then explained that Ms. Howard failed to show any deficits in adaptive functioning before age 22, as demonstrated by the fact that she had previously worked as a driver, a school supervisor, and a security guard, all of which required wide-ranging work abilities (*Id.*). The ALJ also found that Ms. Howard was able to complete a number of activities of daily living, including attending GED courses, driving, shopping, cleaning, and cooking (*Id.*). She was also able to

---

decompensation means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm, visited on August 23, 2017.

[7] The ALJ does not explain what such "objective medical evidence" consists of.

[8] As it relates to Ms. Howard's situation, to meet Listing 12.05, a claimant must show: significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22, a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. pt. 404, subpt. P, App.1, § 12.05 (as effective on Sept. 15, 2014). Listing 12.05 was revised by the Social Security Administration on April 1, 2016 and became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). But the regulations in place on August 26, 2015, when the ALJ's decision became final, govern the appeal. *See id.* at 66138 n.1.

manage her budget, pay her bills, open a bank account, and raise her children (*Id.*). Due to Ms. Howard's past work history, her ability to complete activities of daily living and raise her three children, and the lack of evidence to substantiate the IQ test score, the ALJ found that claimant did not meet listing 12.05 (*Id.*).

With respect to Ms. Howard's RFC, the ALJ found that she had the residual functional capacity ("RFC") to perform light work except that she: could only occasionally lift and carry 20 pounds and frequently 10 pounds; could only occasionally crouch, kneel or crawl; could be on her feet standing/walking about six hours in an eight-hour workday with normal rest periods; could sit about six hours with normal rest periods; stand two hours at a time and sit two hours at time; was unable to work at heights, climb ladders, or frequently negotiate stairs; should avoid concentrated exposure to fumes, dust, odors, gases or poorly ventilated areas as well as wet or humid environments or extreme of temperatures; was unable to understand, remember and carry out detailed and complex job tasks; and was limited to casual contact with the general public or co-workers, including supervisors (R. 208-219). The ALJ also considered the exacerbating effects of plaintiff's obesity on her impairments, including asthma and arthritis, and her need to alternate between sitting and standing throughout the workday although not necessarily at will (R. 218).

Considering the opinion evidence about Ms. Howard's mental health, the ALJ gave agency consultant Dr. Hudspeth's opinion little weight because his assessment was made prior to psychological reports that found Ms. Howard to have severe mental health impairments (R. 216). The ALJ gave Dr. Friedson's opinion moderate weight because it was based on a one-time evaluation and was somewhat more restrictive than the longitudinal record supported (R. 217). Specifically, the ALJ noted that Dr. Friedson's finding that Ms. Howard was moderately limited

8

in social interactions was in contrast to her own report of having several close friends and being able to get along with others, as well as the fact that she was cooperative and friendly with Dr. Friedson (*Id.*). Within the section of the ALJ's opinion where he discussed Dr. Friedson's report, the ALJ repeated his Paragraph B finding that Ms. Howard had moderate limitation in concentration, persistence, and pace and stated that he reduced her RFC accordingly, but the ALJ did not specify the nature of such reductions (*Id.*).

### III.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Stepp v. Colvin,* 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin,* 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue,* 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). However, in rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart,* 395 F.3d 737, 744 (7th Cir. 2005).

Ms. Howard contends that the ALJ's determination that she is not disabled should be reversed because the ALJ erred in: (1) deciding that claimant's impairments do not meet or equal a listing level; (2) giving inappropriate weight to medical opinion evidence; (3) relying on flawed vocational expert testimony; and (4) making a negative credibility finding (doc. #16: Pl.'s Mot. for Summ. J.). We conclude that remand is required here because the ALJ failed to build a logical bridge: (a) from his Paragraph B finding that Ms. Howard had moderate limitations in concentration, persistence, and pace (b) to the hypothetical he gave the VE, which did not use the

words "concentration, persistence, and pace," but only stated that Ms. Howard was unable to perform jobs that required her to remember, understand, and carry out detailed and complex job tasks.

When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record, including documented limitations of "concentration, persistence or pace." *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009). An ALJ's hypothetical to a VE does not need to use the specific words "concentration, persistence, and pace" if it uses alternative phrasing which specifically excludes "those tasks that someone with the claimant's limitations would be unable to perform." *Sullivan v. Astrue,* 825 F.Supp.2d 928, 937 (N.D.Ill. 2011) *citing O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). In this case, we find that the ALJ's alternative phrasing does not create a logical bridge from which we can trace Ms. Howard's two distinct mental health impairments to what limitations those impairments cause, and then to how those limitations specifically affect her concentration, persistence, and pace.

Ms. Howard has two distinct and documented mental health conditions: a learning disorder and depression. The ALJ's opinion does not specify which of these two impairments causes limitations in concentration, persistence, and pace or how one or both impairments do so; the ALJ's Paragraph B discussion of the issue summarizes medical evidence both from claimant's testing for a learning disability and from her examination by Dr. Friedson, who ultimately diagnosed her with depression. Missing is any analysis or explanation about how the summary of evidence translates into a particular problem with concentration, persistence, and pace caused by a particular mental health issue.[9] Therefore, we are unable to determine if the

---

[9] It is true that the ALJ's hypothetical tracks the limitations found by Dr. Friedson in the Medical Source Statement form he completed on Ms. Howard. But nothing in that statement indicates that Dr. Friedson is addressing

10

language in the hypothetical, finding Ms. Howard unable to remember, understand, or carry out complex and detailed jobs, adequately accounted for Ms. Howard's specific limits in concentration or instead referred to some other aspect of Ms. Howard's condition.

In contrast, in cases where the court has accepted an ALJ's alternative hypothetical language, the record contains clear evidence of how the claimant's mental health impairment affects his or her concentration, persistence, and pace, and the hypothetical plainly speaks to those limitations. *See, Terry v. Astrue,* No. 3:09-CV-503, 2011 WL 855346 at *20 (N.D.Ind. 2011) (hypothetical limiting a claimant with a panic disorder to "repetitive, low stress work" accounted for moderate limitations in concentration, persistence, or pace because it spoke to the claimant's capacity to concentrate.) In *Terry,* the claimant's panic disorder was the source of her limitations in concentration, persistence, and pace, and thus, low-stress work was likely to help her avoid panic attacks and avoid being off-task. 2011 WL 855346 at *20 *citing O'Conner-Spinner,* 627 F.3d at 619-20. *See also, Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014) (holding that claimant's psychiatric disorder, which caused him to experience hallucinations and bouts of rage and obsessive-compulsive disorder, required a low-stress position that would not trigger his symptoms and thus affect his ability to stay on-task).

Even assuming the ALJ adequately identified the medical source of Ms. Howard's limitations in concentration, persistence, and pace, the next problem with the hypothetical is that the language the ALJ used does not directly speak to those limitations. The Seventh Circuit has held that a hypothetical which merely restricts a claimant to "simple, routine, and repetitive tasks" fails to adequately account for limitations the claimant has in concentration, persistence, and

---

Ms. Howard's limitations in concentration, persistence, and pace; unlike other psychiatric review forms we sometimes see in these cases that specifically identify tasks and abilities related to concentration, persistence, and pace, the document Dr. Friedson completed made no such identification.

11

pace. *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015). Claimant contends (without citation to legal authority) that *never* being able to understand, remember, and carry out complex or detailed tasks is identical to *only* being able to perform simple, routine, and repetitive tasks (Mot. for Summ. J. at 21, emphasis added). However, in *Varga,* the appeals court explained that the characterization of a job as "simple, routine, and repetitive" describes a job that can be learned in 30 days or less, and does not address whether a claimant could maintain the concentration, persistence or pace to continue performing that job over the length of the work day or work week. *Id.* Although she does not say so explicitly, claimant's argument implies that the hypothetical refers only to her inability to learn complex job duties, not to her ability to concentrate or stay on task throughout the workday or work week.

In opposition, the Commissioner asserts that the ALJ's hypothetical directly addressed Ms. Howard's ability to concentrate (Resp. to Mot. for Summ. J. at 11). Defendant cites to *Terry* 2011 WL 855346 at *20, for the proposition that a hypothetical limiting a claimant to "'repetitive, low stress work' accounted for moderate limitations in concentration, persistence, or pace because it spoke to the claimant's capacity to concentrate" (Resp. to Mot. for Summ. J. at 11). But as we explained above, the claimant in *Terry* had an established panic disorder and court's discussion related to a hypothetical that described work that was not just simple and repetitive, but low-stress. Nothing in *Terry* suggests that merely using words limiting a claimant to simple and routine work speaks to problems with concentration, persistence, and pace.

Moreover, as suggested by *Varga,* the ALJ's actual hypothetical language, with its focus on memory and ability to understand, may have addressed Ms. Howard's ability to learn, not her ability to stay on task. If the ALJ intended to bar Ms. Howard from performing complex or detailed work because her learning disability prevented her from learning such jobs, then there is

nothing in the hypothetical (or the RFC) to account for the ALJ's finding that Ms. Howard also had moderate limitations in concentration, persistence, and pace. Indeed, the VE's testimony supports the proposition that a restriction to jobs that do not entail complex or detailed tasks does not invariably address concentration, persistence, and pace. The VE identified a number of jobs she said could be performed by a person who was not capable of performing complex or detailed tasks (R. 32-33). However, the VE also said that a person who would be off task for 15 percent or more of the work day (*e.g.,* one who lacked concentration, persistence, and pace) could not perform the jobs she identified. That is, the VE's testimony suggested that there was a difference between Ms. Howard's ability to learn or perform the jobs she identified, and her ability to remain on task for a sufficient amount of time to keep her job.

Dr. Friedson's opinion, the only mental health opinion on which the ALJ relies, does not mention concentration, persistence and pace. And while Dr. Friedson does find that Ms. Howard is markedly limited in her ability to remember, understand, or carry out complex instructions, it is not evident that he considers these limitations related to concentration; indeed, in his written comments to his opinion, Dr. Friedson specifically referred to Ms. Howard's learning disability and education as the causes of her difficulties. *See Terry,* 2011 WL 855346 at *21 (finding ALJ's hypothetical did not adequately account for claimant's difficulties with concentration, persistence, and pace because it was not clear if claimant's concentration issues arose from his physical impairments as opposed to his mental ones).

Given the gaps in the ALJ's analysis of the medical evidence, we cannot tell from the ALJ's opinion if he was considering Ms. Howard's learning disorder or her depression (or both) when he restricted her from performing complex or detailed tasks; if the ALJ was considering her learning disorder, then the RFC may speak to Ms. Howard's ability to learn in general, not

13

her ability to stay on task. Moreover, the ALJ only gave moderate weight to Dr. Friedson's opinion because it was based on a single examination, and the ALJ found it to be more restrictive than the medical record suggested (R. 217).[10] There are no other mental health opinions in the record on which the ALJ might rely, so we are left to wonder how the ALJ's finding that Ms. Howard is moderately limited in concentration, persistence, and pace was accounted for in the hypothetical he gave the VE and then in his RFC determination. For that reason, we must remand the case.

## CONCLUSION

For the reasons set forth above, we grant Ms. Howard's request for remand (doc. # 15), and deny the Commissioner's request for affirmance (doc. # 23). This case is remanded for further proceedings consistent with this ruling.[11]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: September 6, 2017

---

[10] Notably, in discussing Dr. Friedson's opinion, the ALJ gives a specific example about how he translated Ms. Howard's moderate limitations in social functioning into a specific part of the RFC (limiting her to casual contact with the public, co-workers, and supervisors) (R. 217). The ALJ gives no similar example about how the RFC accounts for Ms. Howard's limitations in concentration, persistence, and pace.

[11] Because we remand on this basis, we do not reach the other challenges raised by claimant. That said, we invite the ALJ to consider the other issues raised in deciding the case on remand.